UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE HERNANDEZ-DAVALOS aka JOSE HUMBERTO HERNANDEZ DAVALOS,<br><br>Defendant. | Case No. 1:18-cr-00389-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Defendant Jose Hernandez-Davalos's Motion to Suppress (Dkt. 23). The Court conducted an evidentiary hearing on August 23, 2019 and the parties submitted supplemental briefing afterward. The Court now issues its decision. For the reasons explained, the Court will deny the motion.[1]

---

[1] Defendant also moved to suppress statements Mr. Hernandez-Davalos make to law enforcement officers on September 17, 2018. The government has indicated it will not use these statements in its case in chief. *See Response*, Dkt. 28. Accordingly, the Court need not address this aspect of the motion.

# BACKGROUND

At around 6:30 in the morning on September 15, 2018, someone called 911 and reported that a man in a white pickup was traveling up and down a road in Jerome County firing a weapon. The area of the reported shooting – 328 South and 300 East – is a mixture of dairy farms, fields, and residences.

Deputy Rick Scruggs responded to the call. When he got to the area of the reported shooting, he saw a white pickup pull off the highway and into a residence located at 328 South. After verifying that this was the pickup the 911 caller had reported, Deputy Scruggs followed. He lost sight of the pickup once the pickup had turned in near the residence. The area around the residence included not just a house but also some corrals and outbuildings. Deputy Scruggs eventually saw the pickup again near the residence. He concluded that the driver had "blacked out" on him at some point – that is turn off its headlights – and was thus trying to elude.

When he saw the pickup again, Deputy Scruggs activated his "take-down" lights. These are not red and blue flashing lights, but just very bright lights Deputy Scruggs used to light up the area because it was still dark outside. As Deputy Scruggs pulled up near the pickup, Hernandez stepped out. Deputy Scruggs yelled something along the lines of, "Sherriff's Office! Stop! Let me see your hands!" Hernandez complied, and Deputy Scruggs walked Hernandez back to the front of his patrol vehicle. As he was doing so, he asked Hernandez where the gun was.

Hernandez said he didn't have a gun on his person but that there was a gun in his truck. Deputy Scruggs pat searched Hernandez, found no weapon, and then walked over and looked through the window of the pickup. He saw a rifle laying on the back seat.

Deputy Scruggs walked back to Hernandez, who had remained near the patrol vehicle, and asked more questions. He asked if there were any more weapons, where did Hernandez get the weapon, what was he shooting at, and so on. Hernandez told Deputy Scruggs that he had had problems with vandals in the house and that he thought somebody was inside so he was shooting the rifle to try to scare them out.

After Deputy Scruggs questioned Hernandez, Deputy Wood arrived on the scene as backup. Deputy Wood and Deputy Scruggs then jointly searched the pickup. They found narcotics, narcotics paraphernalia, a 9 mm gun magazine, and several rifle casings scattered throughout the cab of the truck. Deputy Scruggs then arrested Hernandez for possession of a controlled substance.

## ANALYSIS

1. **The Stop**

    Hernandez argues that the police's search and seizure of him and his truck was unconstitutional because "at the time the police stopped Hernandez, they had no probable cause to believe he was committing a crime at all." *Motion Mem.*, Dkt.

23, at 5. Preliminarily, Deputy Scruggs did not need probable cause to stop and question Hernandez. He only needed to harbor a reasonable suspicion that defendant was engaged in criminal activity. *See, e.g., United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000) (reasonable suspicion is all the Fourth Amendment requires for a traffic stop); *see generally Terry v. Ohio*, 392 U.S. 1 (1968). Reasonable suspicion is formed by "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Lopez-Soto*, 205 F.3d at 1105.

Here, the logical interpretation of the tipster report – that someone was shooting "next to the road" – is that the tipster meant the shooter was standing right next to the road, as in on the shoulder of the road, not some distance away from it, as defendant is suggesting. Moreover, the tipster gave additional information – that the person was shooting, getting into his truck and driving a little ways, then getting back out of the truck and shooting again. A reasonable, objective person receiving that information would infer that the person was shooting from the road itself, or, at a minimum, from the shoulder of the road.

Also, Deputy Scruggs reported that when he attempted to stop Hernandez, Hernandez briefly attempted to elude him by pulling into an area between two corrals and shutting off his headlights. This bolsters Deputy Scruggs' suspicion

that Hernandez had just committed a crime. Given these facts, the Court concludes that Deputy Scruggs harbored the reasonable suspicion necessary to justify an investigative stop. He was therefore justified in detaining Hernandez to ask questions.

During an investigative *Terry* stop, an officer may detain a person for the time it will take to investigate the circumstances that provoked their suspicion. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). "Typically this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Id.*

Here, given the tipster report, Deputy Scruggs was justified in asking questions about the shooting. So posing questions such as "Where's the gun?" falls within the scope of a proper *Terry* inquiry. Miranda warnings are not necessary unless the nature of the officers' questioning and accusations go "beyond" a brief, Terry-type inquiry. *See, e.g., United States v. Foster*, 70 Fed. Appx. 415 (9th Cir. 2003). Here, the questioning was directly related to the reason for the stop. The Court will therefore deny defendant's motion to suppress the statements he made in response to Deputy Scruggs' questioning.

**2.    The Search of the Automobile**

The next issue is whether the search of the truck was improper. Police may search an automobile without a search warrant when they have probable cause to believe it contains evidence of criminal activity. *See e.g., California v. Acevedo*, 500 U.S. 565, 580 (1991). The search is justified because of a vehicle's inherent mobility and because of a reduced expectation of privacy. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam). Probable cause can be based upon reasonable inferences from facts known to the arresting deputy. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

The automobile exception applies here. After receiving the tipster report and questioning Hernandez, Deputy Scruggs had probable cause to believe Hernandez had committed a crime, and, further, that the pickup would contain evidence of criminal activity. Hernandez told Deputy Scruggs that he was shooting a rifle in a residential area, plus the tipster had reported that somebody was shooting from the side of the road. As the government has outlined in its supplemental briefing, these facts show probable cause that defendant had committed two crimes: (1) shooting from or across a roadway, *see* Idaho Code § 36-1508(a); and (2) assault, *see* Idaho Code § 18-3301. Under these circumstances, the Court will deny the motion to suppress as it relates to the search of the pickup.

# ORDER

**IT IS ORDERED that** Defendant's Motion to Suppress (Dkt. 23) is **DENIED**.

DATED: November 26, 2019

B. Lynn Winmill
U.S. District Court Judge